Good morning, everyone. The panel has before it today a total of five cases. Three of them are being disposed of on the basis of the briefs without oral argument, namely, Appeal No. 05-1271, All Computers v. Intel Corporation, Appeal No. 05-7192, Bradley v. Department of Veterans Affairs, and Appeal No. 06-3075, Acres v. Department of Treasury. The two cases being argued this morning include as the first case Appeal No. 05-1563, CFM Corporation v. Demplex North America. Mr. Baniak, good morning. Welcome. Please proceed. I'm going to read a trial exhibit, CTX-141. I'm quoting from a report that was prepared for Demplex in the year 2002, so its product is out in the marketplace at this stage. Quote, the superiority of Demplex- What is the issue that you're addressing in your very brief time? I'm addressing the semi-silvered screen, Your Honor, and the importance of that semi-silvered screen insofar as claim construction- Where does the word semi-silvered appear? The word semi-silvered appears in the 707 patent, Your Honor. Yeah, where in the patent? It appears in- It's not in the claim, is it? No, it does not appear in the 580 patent in suit, Your Honor. And here is where, as I was going to say from this trial exhibit, the importance of the semi-silvered screen comes out. The silvered image, this mirror image that is required in the claims, that is a matter of claim construction, and that was where the lower court went wrong insofar as the claim construction that related to the partially reflective screen was concerned. Well, I don't understand your point. I have an expert who says the correct instruction was X, and therefore I have to win? I mean- No, Your Honor. Typically, the experts disagree, other witnesses disagree, the claim language says certain things, written description language says other things, and the trial judge has to sort it out and make a construction, and we review it. But the fact that some expert said so-and-so doesn't establish anything. We don't need an expert's testimony in this case, Your Honor. We're dealing with intrinsic evidence. The intrinsic evidence was set forth in the 580 patent, which is the Hess patent in suit, which specifically referred to you want a definition, you want to understand what are partially reflecting surfaces, you go to the 707 Butterfield patent. That's where you're going to get it. You get it no place else. It was born in that patent, and it was incorporated by reference into the Hess patent in suit. It is the only place you will find that claim construction. And the lower court- The reference to the other patent didn't refer to any particular phrase. It just referred to the other patent by number. It referred to you want to have this particular structure defined. You want to know what that particular structure is, then you go to the 707 patent, wherein it is incorporated by reference here. No other place will you find a definition, will you find any exegesis, any explanation of a partially reflecting screen. That is why I'm saying this is intrinsic evidence, incorporated by reference into the Hess patent. It's the only disclosure that you get, because he pulled it verbatim from that previous patent of Butterfield, 707. Maybe so. Let me ask you this. Where was the claim construction issue you're arguing preserved? That claim construction issue was preserved during Markman, where we specifically- Wait a minute. Don't the rules of procedure require in a jury trial that you object to an incorrect jury instruction containing a claim construction in the charge conference and proper your own correct construction? And if you don't do that, it doesn't matter what the Markman order said, you haven't preserved the issue. We have preserved it, Your Honor. If you look at appendix page 1936, we objected to the jury instruction on claim construction, specifically told the court that the claim construction that the court had rendered- Where did you proffer the correct construction? We had proffered them during the claim construction process, Your Honor. And those are the definitions that we consistently told the court, from Markman through to the jury trial. I thought you had to offer a jury instruction to replace that the judge was poised to give, which contained what you consider the correct construction of the disputed claim term. And failing that, you haven't adequately preserved the claim construction issue in the case of a jury trial. I'm not aware of any authority from this court that says that's the case, Your Honor. You review claim construction de novo, and that goes back to the order of the court. It has nothing to do with the question I'm directing to you, which depends on the rules of procedure, not on case law of this court. On the rules of procedure concerning jury instructions. Well, we did preserve it. I cited you the point in the appendix where we did say, and you reverted back to what we told the court, was going to be the proper construction in Markman. It's explicit. It is set forth at that appendix site, Your Honor. The objection or the correct construction as well? The objection, and referring back to the Markman phase that was explicitly stated, we are objecting to this construction for all the reasons that we set forth in the Markman phase and your order. The judge in this case also issued an order in limine instructing the parties that there was going to be no discussion, no deviance from what the judge had ruled in Markman, period. And that was in response to a motion of limine that had been filed by Dimplex. So we were precluded at that stage when the judge had specifically said there's going to be no further discussion about my Markman rulings in this case. Nonetheless, we did preserve our objection. We did set forth at that stage what it was that we were objecting to. In your opinion, I'm not convinced that you proffered a correct jury instruction. It seems from the page you cited that you did object to the judge's construction, in your view, an incorrect construction. But whether you proffered a correct construction is, let me say, less clear. But I'll look and see. Well, it's there, Your Honor. And as in all charge conferences, these things are occurring rapidly as we're progressing toward, essentially, giving the jury instruction. So at that phase of the trial, it is not uncommon at all to refer back, especially when the judge knows precisely what it is you're talking about, because this had come up time and time again in the course of Markman. So we're at that stage. In terms of why this is significant, this court has rendered the on-demand opinion just the end of last month. And in on-demand, the court said, hearkening to Phillips, that which most naturally aligns with the patent's description of the invention will, in the end, be the correct construction. That's why we go back to find out what does partially reflected action mean? Because as you sit here today thinking about it, that doesn't have any meaning to anyone. It doesn't have any ordinary meaning. So you have to go back and look at the specification, which Phillips says dominates insofar as what it is that that terminology is going to mean. Partly reflected. Does that mean part of it reflects? Some? What does that mean? We don't know unless we know. Well, I would think as a matter of the most fundamental common sense that it would mean some degree of reflectivity. But that's not sufficient when you go and take a look at what it is that the party that Hess actually was saying you need this for. You need it for the illusion. And that is something that is very important and very specific to the claims and comes at the very end. Well, the jury, during their deliberations, called for the device and looked at it. So they were in a position to eyeball it and decide whether sufficient illusion of flaming was created by the degree of reflectivity present or not. As this court has said in Phillips, once you start out with too broad a construction, and that's what happened with respect to partially reflecting, it was a pure dictionary definition construction. Once you start out with a construction like that, systematically, it can infect the entire case. That's what happened in this particular situation, Your Honor. Once we had an incorrect construction of partially reflective, then there was no way to try to fix that somehow, some way, through the use of a dictionary definition, which is what the jury again got, a dictionary definition at trial. So they had no real definition of what this image was, and it was fatally flawed from the beginning, based upon the Markman construction, that we were wedded to, which we couldn't debate at the point where we go into the jury trial. The means for transmitting is something I'd also like to talk about. The means for transmitting is a whole separate issue with respect to how the court didn't get the proper construction of that means for transmitting. It's not just the function of light passing through ribbons in one embodiment, or passing through this sheet with slits in it. Those are the only two means that are described in the patent. There has to be movement as we've set forth in our briefing. Without that movement, insofar as this means for transmitting, there is no possible moving flame effect, as the claim calls for. Because Claim 1 calls for no kind of movement other than what's set forth in the means for producing this moving flame effect. The flicker element doesn't move in Claim 1 at all. And when you compare Claim 1 with independent Claim 26, with independent Claim 30, what you see is that 1 and 26 has this means for moving, has a moving flame effect in it. That requires movement, as you see in Claim 26. Because Claim 26 is a flicker. What has to move? What has to move, what has to be capable of moving, is the flame effect element, that thing that has the slits in it, the thing that has the flame cutouts in it. That is what is making the flame effect. And simply reading Claims 1, 26, and 30... What I can't understand is whether what has to move is the visual image of the flame, or the mechanical thing behind the scenes that creates that visual image. It has to be the flame effect which moves for purposes of generating that moving flame effect. Because as we see in Claim 30, Claim 30 has no flame effect means in it whatsoever. It's out of that claim. And what do we get? We get the flicker element, and the flicker element only generates upwardly moving gases. It does not generate a flame. So the flicker element is not what is generating the flame. It is merely reflecting light. It may augment that flame effect. That which you see visually. But it doesn't generate it. And that's where the court went wrong on this claim construction. The only means has to be a means capable of movement. That affected the infringement part of this case because we have a metal panel that's fixed. That's what CFM uses. A metal panel that is fixed in place. It is incapable of movement. And that came up in the 489 related file history where Dimplex specifically tried to get claims just like the claims in suit now. And the claim construction that they receive now which was rejected in that application by the patent examiner. Well, we aren't bound by what any patent examiner does by way of claim construction in the patent in suit or any related patent. So I don't think that puts any weight on the scale at all that an examiner assumed that the proper construction at least for his purposes was X that doesn't bind us at all. Doesn't bind Judge Leinenweber. Shouldn't. It doesn't bind. It has no influence. It does have influence, Your Honor, because the Dimplex statements that it made to the examiner in trying to distinguish prior art which was not in the Hess patent in suit in distinguishing that prior art. Dimplex specifically said when we were talking about this flame effect. Why would it matter what the applicant says? If we're not bound by what the examiner opined, we're not bound. You're bound by we're bound in terms of flame interpretation using that construction to see what it is that Dimplex, the inventor, actually meant in the 580 patent. We see that later in this case study which is essentially what it is. When Dimplex was faced with rigid prior art, it said it has to move as in the 580. That was the distinction that Dimplex was making. Telling the world, putting us on notice, that is what means for transmitting what it has to do. It must move. So what are you saying? Are you saying that they're stopped for purposes of Judge Leinenweber  these patent claims by what they, Dimplex, said in the prosecution of a different patent? Not a stopper, Your Honor. Then what is it? It's useful for claim interpretation and that's what our case law says. It can be used. And that's the Microsoft case, Your Honor. I see that I'm into my bottle time. I'd like to preserve some. All right. Thank you. Mr. Strain. Thank you, Your Honor, and may it please the court, counsel. Your Honor, this was a well-ordered trial that is followed by a scattershot appeal raising numerous issues that are Well, that's not very helpful. Why don't you address the arguments that have been made by Mr. Baniak here this morning, specifically? I shall, Your Honor, and specifically on the point of the dialogue between Your Honor and Mr. Baniak on the claimed construction, inserting the word mirror, inserting the word mirror into the HES 580 into the HES 580 patent. As was observed, it does not appear in the HES 580 patent. To get that word, they must make reference to the Butterfield patent, but they make inaccurate reference to the Butterfield patent. But they have reflective surface in the claim that's equivalent to a mirror, is it not? It is not, Your Honor, respectfully, because it is indication in the patent is it is a surface that partially reflects light. To get mirror, to get a mirror image, they resort to the Butterfield patent, which they say refers to a lightly silvered surface, but they make an improper reference to the Butterfield patent, Your Honor. They say in their brief at page 15 that the Butterfield patent provides for a screen having a partly or lightly silvered surface. In fact, the Butterfield patent does not say that. The Butterfield patent refers to a single panel quoting may have a partly or lightly silvered screen, changing the permissive to the mandatory, their argument is, changing a maybe to a must. I think we can follow that. You had that very fully set forth in your brief. And they also, Your Honor, they purport to quote our expert as buying into the idea of mirror, but they misquote there because the expert made it very clear, the expert made it very clear, and this is at record 809, that when his usage of mirror, he was talking about right-hand, left-hand reversal. He was looking for an image, and that's what he found. Counsel argues that the jury improperly got a definition of image, but they got the dictionary definition of image over our objection at the request of CFM. And that appears that What's the problem with the dictionary being the source of anything here? We have no problem with it, Your Honor, but CFM purports to raise a problem about it, and the point here is this is not only not preserved, they urge that the dictionary definition be given to the jury. And as far as the flame effect Wait a minute. Before you go on to the next point, what are you saying? They can't complain about it because if it was error, it was invited by them? No, Your Honor. What I'm saying is they can't complain about it because they did not object and preserve it for appeal. And the startling or surprising thing that gives this emphasis is not only didn't they object, but they urged it. But the point is they did not object and preserve it for appeal. That's my point, Your Honor. I'm sorry if I had not made that clear. On the flame effect claims construction. As the court has observed, that is not pertinent to claims 30, 31, and 32 in any event, which do not have a flame effect. And all of the accused articles were found to infringe those three claims. So their flame effect claims construction argument is not even pertinent to those three claims. And looking at claim differentiation, the construction that they urge for claim one, having the means for transmitting light, they neglect to pay attention to the word having means. They treat that as if it were the means. And in that regard, they do violence then, not only to claim two, but if it were to be construed the way they urge it would be construed as it must be mobile or movable and not also including stationary, then it would render redundant their construction would certainly claims four and 26. And as far as their argument that was made this morning about anticipation with the reference to the prosecution history of the child patent. Was that argued here this morning by Mr. Benioff? It was, Your Honor. It was when and, well, I think the court will certainly in the brief, but I didn't recall him making that argument here this morning. As I heard it, Your Honor, it was when the court asked a question about whether he was arguing an estoppel. And he said no, it wouldn't be an estoppel, but we believe it is relevant. And the court did make note, I am sure, of the fact that the patent examiner in the child patent, the patent examiner actually, and this is still on the point of the flame effect construction, Your Honor, the patent examiner there construed the 580 including stationary as well as mobile. And the court, I'm sure, has seen that set out in our brief. Why should we care what either examiner thought? We're only reviewing what Judge Leinenweber ruled. And that's a good question, Your Honor. We had to respond to that argument in the appendix 10. He said, I considered it and found it not helpful and it simply does not help them on their flame effect construction argument. And on anticipation, what we have here, I submit, on anticipation is an effort to blur the distinction between anticipation and obviousness or to distort anticipation and turn it into obviousness. Obviousness was argued below, but abandoned on appeal. We don't have obviousness here. What we have is the jury question by clear and convincing evidence that the jury said not anticipated. I hate to sound so obtuse here, but I didn't understand Mr. Baniak to be arguing here the invalidity issue. I understood his argument, oral argument, not the brief, but the oral argument to be confined to claim construction and infringement. And to the extent that that's correct, I don't believe it's in order for you to be responding. He made his written arguments, you made all your written answers, he made a subset of oral arguments, you get to respond to that subset. I don't think you get to argue anything you want to talk about. I understand, Your Honor. I'll move directly to infringement then in any event, and I thank you. On the infringement issue, Your Honor, they, and I, you know, some of these particulars may not have been argued, but certainly they are claiming and arguing here, non-infringement, and one of the points they have made in the brief, whether here or not this morning, I'm not sure, is that the screen was taken out of the unit and shown to the jury and that was prejudicial and improper. Another issue not preserved. They didn't object to that. That's appendix 733. Not only didn't they object to it, they did the same thing with their expert. That's appendix 1641 to 1642. They complained that there was a comparison of the Dimplex devices with the accused products. That was done not through our infringement expert, but only through our inventor to show copy, which of course was relevant to the obviousness they were pressing below as well as the willfulness. So it was clearly relevant. Was there a request for a limiting instruction? There was not. So this is not preserved. This is certainly  preserved. I did refer to infringement and whether they'll come back on Doctrine of Equivalence or not, I didn't want to make this point. The Doctrine of Equivalence point is certainly not preserved for this appeal. Seventh Circuit law is very, very clear. The EEOC versus AIC security case we've cited in our brief provides that there must be a Rule 50A motion at the close of all the evidence. Here's the Seventh Circuit's words on that point. Quote, that failure kills their argument. Kills their argument. They made none here except on the issue of damages. They made a partial infringement motion at the close of Dimplex's case, but that didn't even cover all of the units and it certainly wasn't on DOE. But the Seventh Circuit law is clear. The failure of, under the EEOC case cited in our brief, the failure to make a Rule 50A motion at the close of all the evidence means that their DOE issue is absolutely not preserved. And the way the infringement was submitted to the jury, with the jury finding literal or doctrinal equivalence infringement of all articles submitted in the disjunctive, they objected to equivalence going to the jury, but not to the jury form. So this Court doesn't even need to reach, if it chose to, the doctrine of equivalence issue, because the literal infringement, which the jury found, provides an ample basis to support the jury verdict. And in any event, they're wrong in the way that they  to equivalence in the disjunctive case.  I'm going to read a little bit more about this case. I'm going to read a little bit more about the case. And I'm going to read a little bit more      case  a   case. And it is not a no- miss case. And the fact that this case is a no- miss case is not    case. And the fact that this case is a no- miss case is not a no-